## UNITED STATES v. SAUL.

### (District Court, W. D. North Carolina. November 10, 1893.)

1. CARRIERS OF PASSENGERS—TRANSPORTATION OF EXPLOSIVES—DYNAMITE.
    The prohibition in Rev. St. § 5353, against transporting nitroglycerin upon vehicles engaged in interstate passenger traffic, extends also to dynamite, which is made by mixing nitroglycerin with some solid and inert absorbent substance, and contains no other explosive ingredient.

2. SAME—WHAT ARE PASSENGER TRAINS.
    A freight train may be regarded as a passenger train, within the meaning of this section, when passengers are conveyed thereby for compensation, in any kind of cars, by authority of the railway company.

Indictment of W. S. Saul under section 5353, Rev. St. U. S., for transporting nitroglycerin on a railway train employed in conveying passengers from the state of Georgia into the state of North Carolina.

R. B. Glenn, U. S. Atty., and D. A. Covington, Asst. U. S. Atty.
G. F. Bason and R. L. Leatherwood, for defendant.

DICK, District Judge, (charging jury.) This is the first time that my judicial duty has required me to construe and apply the provisions of the statute upon which this indictment is founded. The manifest design of the statute is the security and preservation of passengers when traveling upon public conveyances employed in transporting them from one state into another. The statute was enacted by congress in exercising the power to regulate interstate commerce. In another section, (Rev. St. U. S. § 4280,) relating to the same subject, express provision is made that the preceding sections shall not be so construed as to prevent a state or a municipal corporation from passing laws or ordinances regulating to some extent the traffic and transportation of the dangerous explosive articles and substances mentioned in the statute. Railway companies are invested with charter privileges for the purpose of transporting passengers and freight, which is a commercial business, and involves intercourse, and interchange of commodities; and they are properly regarded as commercial corporations intended in many respects for public convenience and benefit. Though penal laws and criminal proceedings are, as a general rule, to be strictly construed and observed, yet the obvious intent of the legislature must not be defeated by a narrow and technical construction and application. The manifest design of the statute

must be accomplished by a fair and reasonable construction of the words expressing the object and policy of the legislative will.

The indictment charges the defendant with the offense of causing nitroglycerin to be transported on a railway passenger train from Atlanta, in the state of Georgia, to Murphy, in the state of North Carolina. The evidence tends to show that he caused dynamite to be transported from and to the places mentioned in the indictment. At the close of the evidence on the part of the prosecution the counsel for the defendant asked the court to instruct the jury to return a verdict of "not guilty," as there was a material and fatal variance between the allegations in the indictment and the proof. I declined to give such instruction, and the defendant introduced testimony in his defense.

The substance known in commerce as dynamite is not expressly mentioned in the statute, but it more nearly corresponds with nitroglycerin than any other substance enumerated. The evidence shows that dynamite is made by mixing nitroglycerin with some solid and inert absorbent substance, and contains no other explosive ingredient. Nitroglycerin is usually employed in the form of dynamite, and the terms of description may well be regarded as synonymous. Such construction of the statute and evidence cannot prejudice the defendant, and deprive him of any substantial defense. It is in accordance with the real merits of the case, with the general design and purport of the statute, and is in furtherance of justice and public policy.

The counsel of defendant has requested me to instruct you that there is not sufficient evidence to show beyond a reasonable doubt that the defendant caused dynamite to be transported on a railway passenger train. From the evidence it appears that the Marietta & North Georgia Railroad Company usually carried on the business of transportation from Georgia to Murphy, in this state, by means of a mixed train of passenger and freight cars. There is some evidence that freight trains were occasionally employed. A freight train may be regarded as a passenger train when passengers are conveyed for compensation in any kind of cars by authority of the railway company. You must be satisfied beyond a reasonable doubt that the dynamite which the defendant caused to be conveyed into this state was transported by a passenger train, before you can find a verdict of guilty. Provision is made in a subsequent section of the statute to guard against the dangers of explosion, when the substances mentioned are transported by freight trains. The doubt which you may properly entertain and act upon must not be a mere supposition of a possibility, but must be a doubt, arising from the evidence, and founded in reason and probability. You must be able to give a good reason for such doubt, or it will be unreasonable, and insufficient to control your verdict. The evidence clearly shows that the defendant caused a box containing dynamite to be transported from Asheville to Bryson City,—places within the limits of this state. I charge you that this well-established fact is not, of itself, sufficient evidence for a verdict of guilty. The cars on that railway do not, in that direction, convey passengers

beyond the limits of this state, as the railway has no close connection at its terminus with the narrow-guage railway that conveys passengers into Georgia. The evidence referred to may be considered in connection with the declarations of defendant as to his former transportation of dynamite made in explanation and reply to the charges of the conductor as to the deception and falsehood of defendant in regard to the contents of the box transported.

It is insisted by the counsel for the prosecution that the manifest design of the statute is to protect passengers in transit from one state to another, and that the interstate transportation of the dangerous substances is not required to constitute the offense; that the railway from Asheville to Murphy is a branch of the Western North Carolina Railway, and is included in a general railway connection and system of interstate transit of large extent, under the control of the Richmond & Danville Railway Company; and its cars are employed in conveying passengers who are coming from and going to other states. In this case I will not give the statute such a broad construction, for the reasons and the circumstances which I have already stated to you; and, moreover, such questions of law are not presented by the definite and specific charges contained in the indictment.

The evidence shows that dynamite was transported from Atlanta to Murphy, in this state, and was received, carried off, and used by defendant. If this dynamite was transported on a passenger train, the person sending the same violated the statute, and the defendant, by receiving the article, became guilty of such offense. As there are no accessories in misdemeanors, all persons participating are regarded in law as principals. I will not repeat the evidence, as it has been so fully recapitulated and commented on in the argument of counsel. You may now take the case, and, with the aid of the instructions given you on questions of law by the court, determine whether or not the defendant is guilty in the manner and form charged in the indictment.

Verdict, "Guilty."